[No. 31836. Department One. March 27, 1952.]

ORVILLE ANDERSON, *Respondent*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant*.[1]

[1] Reported in 242 P. (2d) 514.

*The Attorney General* and *Robert L. Simpson, Assistant,* for appellant.

*Allen & Carey* and *Floyd L. Colvin,* for respondent.

MALLERY, J.—The claimant was injured in extrahazardous employment in 1941. He was rated as totally and permanently disabled, effective January 7, 1943, and was awarded a pension of $40 a month for himself, and $12.50 a month for his three-year-old son. On March 9, 1943, he received a "cash advance" on his own pension in the amount of $750. Accordingly, his monthly pension was reduced proportionately to $37.15. On February 28, 1944, he received a second "cash advance" in the amount of $600. His monthly pension was again reduced proportionately to $34.85. On August 10, 1944, he received a third "cash advance" of $300, and his monthly pension was similarly reduced to $33.70. On November 23, 1945, he applied for a final lump sum settlement of his claim. His application was granted, and the department sent him $2,350, which was the difference between $4,000 and the amounts he had theretofore received as "cash advances." He contended, however, that he was entitled to a full $4,000 without credit being taken for the "cash advances."

On July 5, 1946, the supervisor of industrial insurance rejected his claim for the additional amount of the "cash advances" as part of the final lump sum payment. From this ruling the claimant appealed to the joint board, which sustained the supervisor's order. Whereupon, the claimant appealed to the superior court of Pierce county, which reversed the order of the department. The department has appealed.

This case involves a construction of Rem. Rev. Stat., § 7681 [P.P.C. § 705-13], in effect at the time of respondent's injuries, which provides, in part, as follows:

"In case of death or permanent total disability the monthly payment provided may be *converted*, in whole or in part, into a lump sum payment (not in any case to exceed four thousand dollars ($4,000.00)), equal or proportionate as the case may be to the value of the annuity then remaining, to be fixed and certified by the state insurance commissioner, in which event the monthly payment shall cease in whole or in part accordingly or proportionately. Such *conversions* may only be made after the happening of the injury and upon the written application of the beneficiary (in case of minor children the application may be by either parent) to the department, and shall rest in the discretion of the department. Within the rule aforesaid the amount and value of the lump sum payment may be agreed upon between the department and the beneficiary. In the event any payment shall be due to an alien residing in a foreign country, the department may settle the same by making a lump sum payment in such amount as may be agreed to by such alien, not to exceed 50% of the value of the annuity then remaining." (Italics ours.)

Our specific question is: When a pensioner has requested and received partial conversions pursuant to Rem. Rev. Stat., § 7681, and subsequently requests a final lump sum settlement, is he entitled to the full four thousand dollars maximum allowed by the statute without deduction of the sums previously received as partial conversions?

In *Booth v. Department of Labor & Industries*, 189 Wash. 201, 64 P. (2d) 505, we held that the amount of the lump sum settlement was not subject to discretion or agreement, but that it must be the remainder of the claimant's annuity reserve then remaining or four thousand dollars, whichever was the lesser, and that a purported lump sum settlement in a lesser amount was not binding as final upon the claimant.

In *Horton v. Department of Labor & Industries*, 199 Wash. 212, 90 P. (2d) 1009, we held that, where, by agreement, the claimant had accepted three thousand dollars as a final lump sum settlement, and had later accepted one thousand dollars more which brought the total up to four thousand dollars, the claimant had received all that could be paid

under the statute, and could not, therefore, exact any further award or attack the settlement made at his request.

The difference between the *Booth* and *Horton* cases and the instant case is that the "cash advances" here in question were partial conversions, and did not purport to be a final lump sum settlement in full of the claimant's claim.

If the "cash advances," as the appellant calls them, are in fact the partial conversions contemplated under the act, then the respondent has received four thousand dollars, the maximum allowed as a lump sum settlement, and his claim is properly closed. The respondent, however, contends that the "cash advances" were not partial conversions of his claim because the statute was not followed, in that (1) no written application was made for them, and (2) the insurance commissioner did not fix and certify the value of the annuity then remaining when the "cash advances" were made, as is required by the statute.

As to the necessity for a written application, it may be at once conceded that the department had no authority to make a partial conversion without the written application of the claimant. The record before us is silent on the question of respondent's written application for the "cash advances," but it must be remembered that the findings of the department are *prima facie* correct, and the burden is upon respondent to overturn them. Rem. Supp. 1943, § 7697. When the respondent appealed to the joint board, he offered and omitted such exhibits from the departmental record as he chose. He did not offer his written requests for the "cash advances," as an exhibit, neither did he offer to show that the record did not contain them. He cannot now be heard to say that, because the record before us does not show them, they are not in the departmental record.

As to the failure of the insurance commissioner to certify the value of the annuity remaining after the "cash advances," it is difficult to understand how appellant's pension could have been proportionately reduced without knowing the remaining annuity value. In any event, the purpose of requiring the insurance commissioner to certify

the value of the remaining annuity reserve is solely to ascertain whether a lump sum settlement must fall below four thousand dollars or not. The amount of the reserve in this case exceeds four thousand dollars, and respondent has received the full four thousand dollars. Therefore, no possible injury has come to the respondent, even if we assume that there was such an omission.

■ The respondent contends that the "cash advances" were, in fact, merely an advance payment of his forty dollars a month pension as such, and that, with the elapse of time, payments must be resumed as soon as the period paid for has run. This contention is not tenable. Nowhere in the law is the department authorized to pay pensions in any manner other than the fixed amount as they accrue. Advance payments of a greater amount are only authorized by law when they are made as partial conversions of the claim. *State ex rel. Funtash v. Industrial Commission,* 154 Ohio St. 497, 96 N. E. (2d) 593.

We, therefore, hold that the "cash advances" were, in fact, partial conversions of respondent's claim, and, since he has received four thousand in the aggregate, his claim must be closed.

It appears that, after respondent's claim was closed, and on July 15, 1947, the department, by inadvertence and mistake, sent out a circular letter advising pensioners of an increase in their pensions, as provided for by chapter 233, p. 961, Laws of 1947, and, thereafter, sent him three months' checks totaling $188. Later, the department attempted to correct this error and requested him to refund the amount he had so received. Since he did not return it, the department then stopped payment of his son's $12.50 a month pension until the $188 was absorbed.

Rem. Rev. Stat., § 7679, subd. (c) [P.P.C. § 705-1], reads as follows:

" . . . If an injured workman, or the surviving spouse of an injured workman, shall not have the custody of a minor child for, or on account of, whom payments are required to be made under this section, *such payment or pay-*

*ments shall be made to the person having the lawful custody of such minor child."* (Italics ours.)

■ Since the person having custody of a child may not be the natural parent, it would follow that the child's pension is distinct from and not a part of the parent's pension as such. The department, therefore, had no right to correct mistakes as to the parent's pension at the expense of the child's pension.

■ In connection with the erroneous payment of $188 to the respondent after his claim was closed, he now contends that it constituted a reopening of his claim, and is binding upon the department as such, under the doctrine of *res judicata.* He cites *Abraham v. Department of Labor & Industries,* 178 Wash. 160, 34 P. (2d) 457. In the *Abraham* case, and other cases applying the principle of *res judicata,* the awards in question were predicated upon appropriate hearings or other procedure, so that they constituted a determination of a right. In this instance, the notice of pension and the payments were simply mailed out through a clerical error. It was not a determination. The rule of the *Abraham* case is not applicable here.

That part of the judgment, therefore, which required the department to repay the $188 deducted from the child's pension is affirmed, as is, also, the allowance of attorneys' fees in the court below. The remainder of the judgment is reversed, as herein indicated. No costs are allowed upon the appeal.

SCHWELLENBACH, C. J., GRADY, DONWORTH, and WEAVER, JJ., concur.

---

June 3, 1952. Petition for rehearing denied.